## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| ROSE O'DONNELL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BOARD OF TRUSTEES OF GEORGIA | : | |
| MILITARY COLLEGE AND GEORGIA | : | |
| MILITIARY PREP SCHOOL; RANDALL A. | : | |
| NEW; GEORGE HOGAN, SR.; REV. TONY | : | |
| FRALEY; DORIS RENFROE; KEN VANCE; | : | |
| ALBERTO C. MARTINEZ, JR.; RICHARD | : | CASE NO. 5:15-CV-389-CAR |
| BENTLEY; GEORGIA MILITARY COLLEGE;: | | |
| Lieutenant General WILLIAM CALDWELL, | : | |
| IV, individually and in his official capacity as | : | |
| President of Georgia Military College; PAM | : | |
| GRANT, individually and in her official | : | |
| Capacity Principal of Georgia Military | : | |
| College Prep School; DAVID F. LEWIS, | : | |
| individually and in his official capacity as | : | |
| Senior Army Instructor at Georgia Military | : | |
| College Prep School; Major LARRY MARTIN: | | |
| individually and in his official capacity as | : | |
| an Instructor at Georgia Military College Prep: | | |
| School; and Sfc. CHRIS SWARS, individually: | | |
| and in his official capacity as an Instructor at | : | |
| Georgia Military College Prep School, | : | |
| | : | |
| Defendants. | : | |

_____:

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Rose O'Donnell, a high school student-cadet at Georgia Military College

Prep School, filed this action alleging Defendants violated her substantive due process

rights pursuant to 28 U.S.C. § 1983 and certain state tort laws for forcing her to engage in "excessive and unduly severe" physical exercises during a "Bullring" disciplinary session.[1] Currently before the Court are Defendants' Motions to Dismiss Plaintiff's federal claims.  Upon review of applicable law, the Complaint, and the Motions and responses thereto, the Court finds Plaintiff fails to establish a deprivation of a constitutional right, and thus, the Motions to Dismiss [Docs. 8 & 11] are **GRANTED**. Plaintiff's Request for Oral Argument [Doc. 16] is **DENIED** as unnecessary. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and those claims are **REMANDED** to the Superior Court of Baldwin County.

## BACKGROUND

For purposes of these Motions, the Court accepts all factual allegations in Plaintiff's Amended Complaint as true and construes them in the light most favorable to Plaintiff.

At all times relevant to this action, Plaintiff was a high school student-cadet in her junior year in the Georgia Military Prep School at Georgia Military College. Plaintiff, during her normal course of activities as a high school student-cadet, accrued ten demerits which warranted punishment under the GMC Prep Student Handbook. Under the GMC Handbook, ten demerits issued for violations of student rules such as school uniform violations and tardiness will result in the student-cadet being subjected

---

[1] Am. Compl., ¶14 [Doc. 4].

to one hour of "Retraining," which is more commonly referred to as "Bullring." The Handbook outlines Bullring hours as including marching or some form of work around campus supervised by an assistant military instructor.

At approximately 3:30 p.m. on October 29, 2013, Plaintiff attended one hour of Bullring under the direct supervision of Defendants Martin and Swars, who demanded Plaintiff complete "excessive and unduly severe" physical exercises.[2] The physical punishment Defendants Martin and Swars forced Plaintiff to complete included two timed quarter-mile runs, approximately 30 repetitions of burpees, approximately 60 push-ups, and a certain distance of lunges. The instructors repeatedly told Plaintiff she would have to complete the entire hour over again if she did not complete the required exercises. As Plaintiff visibly struggled with each task, the other cadets were forced to do jumping jacks until Plaintiff was able to complete each set. While attempting to complete the required the push-ups, Plaintiff informed Defendants Martin and Swars she was physically unable to finish. Martin and Swars then demanded she complete the push-ups in "male" form or she would have to re-do the entire hour. In fear of the consequences and as a result of the verbal and environmental pressures, Plaintiff completed the regimen.

As a result of the physical punishment, Plaintiff suffered injuries including rhabdomyolysis, which is a physical breakdown of muscle; debilitating muscle fatigue;

---

[2] *Id.*

3

physical exhaustion; excruciating muscle pain which required an extended hospitalization to prevent renal failure; permanent loss of normal muscle strength in Plaintiff's arms; and the onset of anxiety and other psychological conditions stemming from the severity of Plaintiff's injuries and their effect upon Plaintiff's daily life.

Plaintiff originally filed suit in Baldwin County Superior Court seeking to recover damages from Defendants under Georgia law for negligence and vicarious liability and under § 1983 for alleged violations of the United States Constitution. Defendants properly removed the case to this Court pursuant to the Court's federal question jurisdiction over her § 1983 claims.

In addition to the two instructors who personally conducted the Bullring—Defendants Martin and Swars—Plaintiff also asserts § 1983 claims against GMC's Board of Trustees and members of the Board and the Administration, including individual Board members New, Hogan, Fraley, Renfroe, Vance, Martinez, and Bentley (collectively, the "Board Defendants"); as well as President Caldwell, Principal Grant, and Senior Army Instructor Lewis (collectively, the "Administration Defendants"). All Defendants now move to dismiss Plaintiff's § 1983 claims.

## LEGAL STANDARD

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a

plaintiff's complaint.[3]  To avoid dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[4]  A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5]  The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[6]

## ANALYSIS

Defendants move to dismiss the following claims:

### A.   Federal and State Individual Capacity Claims against the Board Defendants

Plaintiff agrees her asserted federal and state claims against the individual Board Defendants are improper, as the proper state entity is the Board of Trustees. Thus, all claims against Defendants NEW, HOGAN, FRALEY, RENFROE, MARTINEZ, and BENTLEY are hereby **DISMISSED**.

### B.   Claims against Individual Defendants under the Georgia Torts Claims Act

Plaintiff also agrees that her claims brought under the Georgia Tort Claims Act against the individual Defendants are properly asserted only against the Board of

---

[3] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).
[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).
[5] *Id.*
[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Trustees pursuant to O.C.G.A. § 50-21-25(b) because all Defendants were acting in their official capacity. Thus, all claims under the Georgia Tort Claims Acts asserted against Defendants CALDWELL, GRANT, LEWIS, MARTIN, and SWARS are hereby **DISMISSED.**

### C.   § 1983 Substantive Due Process Claims

Plaintiff asserts claims under 42 U.S.C. § 1983 alleging Defendants' conduct violated her Fourteenth Amendment substantive due process rights.[7] Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws."[8]  A plaintiff may bring a § 1983 claim against a governmental entity or person in his individual or official capacity.[9] Plaintiff clarifies she does not assert any § 1983 claims against the individual Defendants in their official capacities; she only asserts these claims against them in their individual capacities. Thus, based on Plaintiff's clarifications and the Court's earlier rulings, Plaintiff asserts her § 1983 claims against the Board of Trustees; the Administrative Defendants—Caldwell,

---

[7] In her Complaint, Plaintiff also asserts violations of her Fifth Amendment substantive due process rights, but she appears to concede these claims must be dismissed, as she fails to address Defendants' Fifth Amendment arguments made in their Motions to Dismiss. Even if Plaintiff does not concede her Fifth Amendment claims must be dismissed, the Court finds she has abandoned them; thus, Plaintiff's Fifth Amendment claims are hereby **DISMISSED**. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000); *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (finding plaintiff abandoned claim by failing to defend it in response to a motion to dismiss).
[8] 42 U.S.C. § 1983.
[9] *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).

Grant, and Lewis—in their individual and official capacities; and the two instructors directly involved—Martin and Swars—in their individual capacities.  The Court will address each of these claims.

## 1. §1983 Claims against Defendants in their Individual Capacity—Qualified Immunity

Defendants Caldwell, Grant, Lewis, Martin, and Swars argue qualified immunity shields them against § 1983 liability because their conduct did not violate Plaintiff's clearly established Fourteenth Amendment substantive due process rights. As explained below, the Court agrees.

"[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."[10] As the Supreme Court recently reiterated, "[w]hen properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law."[11]  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing

---

[10] *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quotation marks omitted).
[11] *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).

litigation."[12]   Qualified immunity is immunity from suit and should be resolved as early as possible in the case.[13]

When a defendant invokes qualified immunity, the initial burden is on the defendant to show that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."[14]   Once the defendant satisfies that burden, the burden then shifts to the plaintiff to show that (1) a violation of a constitutional right occurred, and (2) that right was "clearly established" at the time of the violation.[15]

Here, it is clear Defendants were acting within the scope of their discretionary authority.   Therefore, the burden shifts to Plaintiff to prove their conduct violated her clearly established Fourteenth Amendment substantive due process rights.

### a.  Constitutional Violation

Plaintiff claims Defendants violated her Fourteenth Amendment substantive due process rights. The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."[16] Embodied in the Fourteenth Amendment is the protection of both procedural and substantive due process. The substantive component of the Due Process Clause "protects individual liberty against 'certain

---

[12] *Lee*, 284 F.3d at 1194.
[13] *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).
[14] *Lee*, 284 F.3d at 1194.
[15] *Pearson*, 555 U.S. at 232.
[16] U.S. CONST. amend. XIV § 1.

government actions regardless of the fairness of the procedures used to implement them.'"[17] This protection is "intended to prevent government officials from abusing their power, or employing it as an instrument of oppression."[18]

The substantive due process clause imposes affirmative duties of care on the state only in limited circumstances: (1) where the state takes a person into custody, confining her against her will, and (2) when the government's actions can be characterized as arbitrary or conscience shocking in the constitutional sense.[19] The Supreme Court has tightly restricted the scope of substantive due process claims and has expressed its reluctance to expand its scope.[20]  The Supreme Court and the Eleventh Circuit "have both said repeatedly that the Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action."[21]

    (1) <u>Duty Created by Custodial Relationship</u>

---

[17] *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

[18] *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation marks and citation omitted).

[19] *See Doe v. Braddy, 673 F.3d 1313, 1318 (11th Cir. 2012); DeShaney*, 489 U.S. at 198-99; and *Collins*, 503 U.S. at 128.

[20] *Collins*, 503 U.S. at 125 (citation omitted) ("[G]uideposts for responsible decision making in this unchartered area [expansion of substantive due process] are scarce and open-ended.  The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.").

[21] *Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (quoting *Cnty. of Sacramento*, 523 U.S. at 848).

Plaintiff first argues Defendants' constitutional duty of protection arises through her involuntary custodial relationship with Defendants. Specifically, Plaintiff contends the Bullring session was mandatory punishment for violations of school rules, and thus, the Court must analyze her claims under the less rigorous deliberate indifference standard used to analyze substantive due process claims of persons in state custody. The Court, however, is unpersuaded and agrees with Defendants this argument "stretches the limits of the term 'involuntary' confinement far past its intended due process boundaries."[22]

A duty of protection arises where the state has a custodial relationship with an individual, but such a duty arises from such circumstances such as incarceration in prison or involuntary commitment in a mental institution.[23] In general, schools do not have a custodial relationship with their students because public schools generally lack the requisite control over children to impose such a duty of care.[24] Schools do not place the kind of restraints on students' liberty that prisons place on inmates,[25] mental health institutions place on committed patients,[26] or foster homes place on involuntarily placed children.[27] "Children in foster homes, unlike children in public schools, are isolated; no persons outside the home setting are present to witness and report mistreatment. The

---

[22] Defendants' Reply Brief, p. 3 [Doc. 20].
[23] *Davis v. Carter*, 555 F.3d 979, 982 n.2 (11th Cir. 2009) (citation omitted).
[24] *See id.; Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 569 (11th Cir. 1997).
[25] *See Estelle v. Gamble*, 429 U.S. 97 (1976).
[26] See *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189 (1982).
[27] *See Taylor v. Ledbetter*, 818 F.2d 791 (11th Cir. 1987).

children are helpless. Without investigation, supervision, and constant contact required by statute, a child placed in a foster home is at the mercy of the foster parents."[28]

That Plaintiff was in "mandatory punishment" does not render her relationship with the school custodial. She was not a prisoner or involuntarily committed mental patient or foster child, helpless and at the mercy of the prison, mental facility, or foster home; she was a sixteen year old student attending a public military school, a school she chose to attend rather than her geographically designated school. Participating in the Bullring session was required for her to stay in the school of her choice; it was not an involuntary confinement. Thus, because Plaintiff was not in a custodial relationship, Defendants' conduct must rise to the arbitrary and conscience-shocking level for Plaintiff to maintain her constitutional claim.

(2) Conduct that Shocks the Conscience

In non-custodial relationships, the government can be held liable under the substantive due process clause "only where an official's act or omission is 'arbitrary[] or conscience-shocking.'"[29] "'Numerous cases in a variety of contexts recognize it as a last line of defense against those literally outrageous abuses of official power whose very variety makes formulation of a more precise standard impossible.'"[30] Conduct by a

---

[28] *Tylor v. Ledbetter*, 818 F.2d 731, 797 (11th Cir. 1987).

[29] *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999) (quoting *Collins*, 503 U.S. at 128).

[30] *Hatfield v. O'Neill*, 534 F. App'x 838, 844 (11th Cir. 2013) (quoting *Hall v. Towney*, 621 F.2d 607, 613 (4th Cir. 1980)).

government actor that would amount to an intentional tort under state law would not, without more, rise to the level of the constitutional violation.[31] "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense."[32] "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability."[33] While no precise rubric exists, conduct "intended to injure in some way unjustifiable by any government interest" is the sort of official action most likely to rise to the conscience-shocking level.[34]

Plaintiff does not argue her punishment was imposed with no legitimate disciplinary purpose. Indeed, no one disputes Plaintiff accrued the demerits necessary to justify punishment under the school policy. Instead, Plaintiff claims Defendants' conduct amounted to corporal punishment imposed in an unconstitutionally excessive manner.  Defendants contend their conduct does not constitute corporal punishment because Defendants did not apply physical force to Plaintiff.[35] However, "[t]he key inquiry is not what form the use of force takes but whether the use of force is 'related to

---

[31] *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002).

[32] *Waddell*, 329 F.3d at 1305.

[33] *Id.* at 846.

[34] *Davis*, 555 F.3d at 982 (citation and internal quotation marks omitted).

[35] *See Hatfield*, 534 F. App'x at 844 ("Corporal punishment in schools typically refers to the application of physical force by a school official to punish a student for some type of school-related punishment.") (citing *Ingraham v. Wright*, 430 U.S. 651, 661 (1977)).

[the student's] misconduct at school and . . . for the purpose of discipline.'"[36] The Court will assume Defendants' conduct meets this definition for purposes of summary judgment.

Broadly speaking, "excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment. . . may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior."[37] To show the allegedly excessive corporal punishment is conscience-shocking, a plaintiff must prove at a minimum that "(1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury."[38]

To determine whether the amount of force used is obviously excessive, the Court considers the totality of the circumstances.[39] Among other things, the Court looks to "(1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted."[40]

---

[36] *T.W. ex rel. Wilson v. School Bd. of Seminole County, Fla.*, 610 F.3d 588, 599 (11th Cir. 2010) (quoting *Neal*, 229 F.3d at 1073).
[37] *Id.* (internal quotation marks and citation omitted).
[38] *Neal*, 229 F.3d at 1075.
[39] *Id.*
[40] *Id.*

In considering the need for the use of force, the Court "look[s] at the circumstances surrounding [Defendants'] use of force to determine whether the force is capable of being construed as an attempt to serve pedagogical objectives."[41] Here, forcing Plaintiff to engage in physical exercise as punishment for violating school rules "is capable of being construed as an attempt" to maintain discipline and ensure future compliance with school rules.[42] Plaintiff had accrued demerits for violating school rules, thus providing Defendants with a legitimate reason to use force. Although Defendants could have used alternative disciplinary methods, Defendants' use of force was disciplinary and thus not "wholly unjustified by a government interest."[43]

Next, the Court must consider the relationship between the need for the use of force and the amount of force administered. Here, Defendants were acting with a disciplinary purpose based on Plaintiff's accrual of the requisite demerits warranting school punishment. The punishment itself consisted of one hour of excessive physical exercise which included timed sprints, lunges, burpees, pushups, and verbal abuse. Although Defendants could have punished Plaintiff "in a less harmful manner, the amount of force at issue here was not totally unrelated to the need for the use of force."[44]

---

[41] *T.W. ex rel. Wilson*, 610 F.3d at 600 (internal quotation marks and citation omitted).

[42] *Id.*

[43] *Peterson*, 504 F.3d at 1336.

[44] *T.W. ex rel. Wilson*, 610 F.3d at 601 (internal quotation marks and citation omitted); *compare Hatfield v. O'Neill*, 534 F. App'x 838, 847-48 (11th Cir. 2013) (force obviously excessive where teacher struck profoundly mentally and physically handicapped child on the head in a place where she was particularly vulnerable due to her previous surgery <u>for no legitimate reason</u>) (emphasis in original).

14

Finally, to determine whether the corporal punishment was obviously excessive, the Court must consider the extent of Plaintiff's injuries. Here, Plaintiff suffered rhabdomyolysis (physical breakdown of her muscles), "debilitating muscle fatigue", physical exhaustion, "excruciating muscle pain which required extended hospitalization to prevent renal failure," and permanent loss of normal muscle strength in her arms.[45] While the extent and nature of Plaintiff's injuries is an important factor in the analysis, "it is indeed only one factor in our analysis."[46] Although Plaintiff's alleged injuries are serious, the conduct causing these injuries is simply not tantamount to arbitrary, egregious, and conscience-shocking behavior. After considering the totality of the circumstances, Plaintiff's allegations fail to establish Defendant's use of force was obviously excessive.

Moreover, Plaintiff's allegations are insufficient to sustain a claim Defendants "subjectively intended to use an obviously excessive amount of force in circumstances where it was foreseeable that serious bodily injury would result."[47] "In short, the standard is shock the conscience and totality of circumstances; and when some reason exists for the use of force, constitutional violations do not arise unless the teacher inflicts serious physical injury upon the student."[48] Here, Defendants had a disciplinary reason

---

[45] Am. Compl. ¶ 17.
[46] *Wilson*, 610 F.3d at 601; *see also Neal*, 229 F.3d at 1076.
[47] *Neal v. Fulton Cnty. Bd. of Ed.*, 229 F.3d 1069, 1075 (11th Cir. 2000).
[48] *Peterson v. Baker*, 504 F.3d 1331, 1338 (11th Cir. 2007).

to use of force, and the physical injuries Plaintiff suffered are not severe enough to maintain a constitutional claim. The allegations are insufficient to establish Defendants' intended to use obviously excessive physical exercise in circumstances where it was foreseeable serious bodily injury would result. The physical exercise Plaintiff endured happened at the end of October. Plaintiff makes no allegations Defendants disregarded excessively high temperatures or intentionally deprived Plaintiff of water or rest.

Ultimately, in analyzing Eleventh Circuit case law in which corporal punishment has given rise to a potential constitutional violation, this Court cannot find Defendants' alleged conduct rises to arbitrary and capricious. In <u>Neal</u>, a high school coach intentionally struck a student with a metal weight lock, knocking the student's eye out of its socket.[49] In <u>Kirkland</u>, a high school principal struck the student with a metal cane in the head, ribs, and back to cause a large knot and continuing migraine headaches. By contrast, in <u>Peterson</u>,[50] the court concluded that choking a student until he lost his breath and sustained blue and red bruises and a scratch on his neck was not obviously excessive because the extent of the student's bodily injuries were not serious.[51]

---

[49] *Id.*at 1071.
[50] 504 F.3d 1331 (11th Cir. 2007).
[51] *Id.* at 1334-35, 1337.

Eleventh Circuit case law illustrates how rigorous conscience-shocking conduct is,[52] and the facts as alleged in Plaintiff's Amended Complaint do not rise to that level. Simply put, Plaintiff's allegations are not "so brutal, demeaning, and harmful as to literally shock the conscience of the court."[53] The Eleventh Circuit has stated that "when someone not in custody is harmed because too few resources were devoted to their safety and protection, that harm will seldom, if ever, be cognizable under the Due Process Clause."[54]  This case is no exception.  Plaintiff has not alleged facts sufficient to state a claim that Defendants deprived her of a constitutional right; thus, her federal claims must be dismissed.[55]

### b.  Clearly Established Law

Even if Defendants' alleged conduct did amount to a violation of Plaintiff's constitutional rights, qualified immunity still protects Defendants because any such rights were not clearly established. "For a constitutional right to be clearly established the contours of the right must be sufficiently clear that a reasonable [official] would

---

[52] *See, e.g., Dacosta,* 304 F.3d 1045 (college instructor's conduct did not rise to conscience-shocking level where instructor slammed door on student's arm causing the glass to shatter, knocked student back by swinging the door violently, and shoving plaintiff's face);  *Nix v. Franklin County School District,* 311 F.3d 1373 (11th Cir. 2002) (no constitutional deprivation where student died after touching an exposed live wire in teacher's electromechanical class during a voltage-reading demonstration); *compare Neal,* 229 F.3d 1069 (court found high school coach's conduct conscience shocking where he intentionally struck a student with metal weight, knocking student's eye out of its socket, as form of punishment); *Kirkland,* 347 F.3d 903 (court found high school principal's conduct conscience shocking where he struck student with metal cane in head, ribs, and back for disciplinary reasons).

[53] *Neal,* 229 F.3d at 1075.

[54] *White v. Lemacks,* 183 F.3d 1253, 1258 (11th Cir. 1999).

[55] *Id.*

17

understand that what he is doing violates the law."[56] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."[57]  In other words, the issue is whether the law gave the [official] "fair warning" that his conduct was unconstitutional.[58] When determining whether the law is clearly established, factually similar cases are "usually . . . needed to demonstrate that officials were fairly warned that their application of force violated the victim's constitutional rights."[59] In conducting the clearly-established analysis, "the district court should compare the facts of the case before the court that allege a constitutional deprivation with those cases that the party opposing the motion contends show the clearly established nature of the law."[60]  To find such cases, the Court must look only "to law as decided by the Supreme Court, the Eleventh Circuit, or the Supreme Court of [Georgia]."[61]

No case law gave Defendants fair warning their actions would violate Plaintiff's constitutional rights. The Eleventh Circuit has dismissed claims of students who have endured arguably more severe punishment than Plaintiff in this case. In <u>T.W. ex rel.</u>

---

[56] *Bates v. Harvey*, 518 F.3d 133 (11th Cir. 2008).

[57] *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

[58] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[59] *Willingham v. Loughnan*, 321 F.3d 1299, 1303 (11th Cir. 2003).

[60] *Merricks v. Adkisson*, 785 F.3d 553, 559 (11th Cir. 2015).

[61] *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1345 (11th Cir. 2013).

Wilson,[62] a teacher on four different occasions (1) sat on a student to restrain him, (2) forced him to the floor in an inappropriate position, (3) twisted his arm and shoved him into a wall, and (4) pinned his arms behind his back, all causing transient pain, minor bruising and psychological trauma. The court found the teacher's conduct was not obviously excessive to support the student's claim of a violation of his substantive due process rights. In Peterson, the court also dismissed the constitutional claim where a teacher choked a student, causing him to temporarily struggle to breathe and leaving blue and red bruises and a scratch on his neck.

In cases where the Eleventh Circuit has found excessive corporal punishment claims to be legally sufficient to sustain a constitutional claim, the conscience-shocking conduct was far worse than in the case here. In Kirkland, the principal repeatedly struck a non-resisting student with a metal cane, including once on the head.[63] In Neal, a coach struck a student in the eye with a weight lock, knocking the eye out of its socket.[64] Both Neal and Kirkland involved direct, intentional physical abuse that resulted in immediate and severe physical injuries to the student. Plaintiff's allegations here do not rise to this level.

Moreover, Plaintiff did not point to nor did this Court find any case considering whether forced physical exercise imposed as punishment in a school setting is corporal

---

[62] 610 F.3d 588, 603 (11th Cir. 2010).
[63] 374 F.3d at 904.
[64] 229 F.3d at 1076.

punishment or arbitrary and capricious. The Eleventh Circuit has addressed physical exercise in the realm of voluntary high school football practice.

In <u>Davis v. Carter</u>[65], the Eleventh Circuit found the defendants were entitled to qualified immunity after subjecting a high school student to an intense and unreasonable voluntary summer football practice that caused the student to collapse and die the next morning. The plaintiffs alleged the coaches failed to provide enough water to keep the student hydrated, ignored signs and the student's complaints that he was becoming dehydrated, subjected him to rigorous conditioning drills at the end of a two-hour practice, and failed to attend to the student until after a team meeting even though he had collapsed in the middle of the drills.[66] The Court found the allegations pointed to the conclusion the coaches merely acted with deliberate indifference, which is insufficient to reach the "conscience shocking" level required to establish a constitutional violation.[67] Although not a corporal punishment case, and thus distinguishable because this Court is considering Defendants' conduct here to be corporal punishment for purposes of this Motion, <u>Davis</u> remains illustrative in the clearly established analysis. Indeed, the Eleventh Circuit has stated "that students will be able to state a claim *only* where the alleged corporal punishment truly reflects the kind of egregious official abuse of force that would violate substantive due process

---

[65] 555 F.3d 979 (11th Cir. 2009).
[66] *Id*. at 980-81.
[67] *Id*. at 984.

protections in other, non-school contexts."[68] Thus, even if Defendants' conduct constituted excessive corporal punishment, Defendants are still entitled to qualified immunity because their actions did not violate Plaintiff's clearly established rights.

1.   **§ 1983 Claims against the Board and Administrative Defendants**

In order to impose § 1983 liability on a governmental entity, a plaintiff must show: (1) her constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation.[69] Because this Court has found Plaintiff's allegations fail to state a claim for a violation of her constitutional rights, her § 1983 claims against the Board and the Administrative Defendants fail. However, even if Plaintiff did sufficiently allege Defendants violated her substantive due process rights, her supervisory liability claims against the Board and the Administrative Defendants would still fail.

In order to state a section 1983 claim against a local government entity, a plaintiff "must identify a specific deprivation of a federal right and the local government policy or custom that caused the deprivation of the federal rights."[70] A local government entity may not be found liable under § 1983 for an injury inflicted solely by its employees or

---

[68] *Neal*, 229 F.3d at 1076.

[69] *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

[70] *Chaney v. Fayette Cnty. Public Sch. Dist.*, 977 F. Supp. 2d 1308, 1318 (N.D. Ga. 2013) (citing *Bd. of Cnty. Com'rs v. Brown*, 520 U.S. 397, 404 (1997)).

agents, even when that injury results in a constitutional violation.[71] Instead, "a plaintiff must demonstrate that the government entity has a custom or practice or allowing the particular constitutional violation."[72] To do this, a plaintiff generally must show "a persistent and widespread practice."[73] Plaintiff here fails to state such allegations.

To support her supervisory liability claims, Plaintiff merely alleges the Board and the Administrative Defendants "established an official policy and custom on the use of physical punishment at Georgia Military College that was the moving force in the excessive, malicious, sadistic, and shocking physical punishment administered on the Plaintiff by Defendants Martin and Swars as described in this Complaint."[74] The Complaint describes only one incident, and Plaintiff fails to allege any facts to establish this incident was part of widespread unconstitutional conduct. Moreover, there are no allegations these Defendants directed Martin and Swars' conduct or were even aware of the alleged unconstitutional conduct and failed to stop it. To survive a motion to dismiss, Plaintiff must do more than point to conclusory allegations. She must "plead[] factual content that allows the court to draw on the reasonable inference that the defendant is liable for the misconduct alleged."[75] Plaintiff's allegation of a "policy and custom on the use of physical punishment" is conclusory and fails to adequately state a

---

[71] *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).
[72] *Daniel v. Hancock Cnty. Sch. Dist.*, 626 F. App'x 825, 832 (11th Cir. 2015) (citing *Grech v. Clayton Cnt.*, 335 F.3d 1326, 1330 (11th Cir. 2003)).
[73] *Id.* (citing *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994)).
[74] Am. Compl., ¶ 30.
[75] *Iqbal*, 556 U.S. at 678.

supervisory liability claim. "Alleging vaguely that a policy, custom or practice exists is not enough; rather plaintiff must specifically identify which policy or practice, if any, caused the alleged injuries."[76] Thus, Plaintiff's § 1983 supervisory liability claims must be dismissed.

### D.  Remaining State Law Claims

Having dismissed Plaintiff's federal claims, the Court must now determine whether it should exercise supplemental jurisdiction over the remaining state law claims.[77] The Court may decline to exercise supplemental jurisdiction over non-diverse state law claims if:

(1) The claim raises a novel or complex issue of State law,

(2) The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) The district court has dismissed all claims over which it has original jurisdiction, or

---

[76] *Searcy v. Ben Hill Cnty. Sch. Dist.,* 22 F. Supp. 3d 1333, 1341 (M.D. Ga. 2014) (internal quotation marks and citation omitted).
[77] *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

23

(4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction.[78]

Additionally, in deciding whether or not to exercise supplemental jurisdiction over pendent state law claims under § 1367(c), a court should also consider the interest of judicial economy, convenience, fairness to the litigants, and comity.[79]

Here, all of the federal claims over which this Court has original jurisdiction must be dismissed. "When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims."[80] The Eleventh Circuit has repeatedly stated that "[s]tate courts, not federal courts, should be the final arbiters of state law."[81] Having fully considered the matter, the Court concludes Plaintiff's state law claims should be determined by the Georgia courts. Thus, the Court finds it appropriate to decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c).

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss [Docs. 8 & 11] are **GRANTED**, and Plaintiff's Request for Oral Argument [Doc. 16] is **DENIED** as

---

[78] 28 U.S.C. § 1367(c).
[79] *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994).
[80] *Arnold v. Tuskegee Univ.*, 212 F. App'x 803, 811 (11th Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).
[81] *See, e.g., Baggett v. First Nat. Bank of Gainesville*, 117 F.2d 1342, 1353 (11th Cir. 1997).

unnecessary.  Because the Court has dismissed the § 1983 claims initially giving rise to this Court's original jurisdiction and declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, the remainder of Plaintiff's Amended Complaint is hereby **REMANDED** to Baldwin County Superior Court pursuant to 28 U.S.C. § 1367(c)(3).

**SO ORDERED**, this 29th day of June, 2016.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

SSH

25